UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KOSTMAYER CONSTRUCTION CO., L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO:  05-6655**<br>**C/W 06-1272** |
| **CARLINE'S GEISMAR FLEET, INC.** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Cajun Constructors, Inc.'s "Motion for Partial Summary Judgment" on Kostmayer Construction Co., L.L.C.'s claim for loss of use of crane K-112, adopted by Philadelphia Point Fleet, Inc., Carline Management Company, Inc., and Northern Assurance Company of America,  is **GRANTED**.  (Document #100.)

**IT IS FURTHER ORDERED** that the "Motion for Partial Summary Judgment on the Issue of Liability [of Cajun Constructors, Inc.]" of Kostmayer Construction Co., L.L.C. and Monticello Equipment Corporation is **DENIED**.  (Document #101.)

**IT IS FURTHER ORDERED** that the "Plaintiffs' Motion for Partial Summary Judgment on the Issue of Limitation of Liability" of Kostmayer Construction Co., L.L.C. and Monticello Equipment Corporation, joined by Cajun Construction, Inc., is **DENIED.**

(Document #109.)

## I. BACKGROUND

On September 13, 2005, the M/V CSS CHICORA took Barge OU 701 in her tow for a voyage. While in tow, the barge struck a stationary vessel, the M/V NAVIOUS STAR, in the Mississippi River in St. Charles Parish, Louisiana. The barge, the crane, and other equipment aboard the barge sustained damage.

Kostmayer Construction Co., L.L.C. (Kostmayer), who leased the crane and barge from its owner, Monticello Equipment Corporation (Monticello), filed a complaint and an amended complaint under Rule 9(h) of the Federal Rules of Civil Procedure against Philadelphia Point Fleet, Inc. (Philadelphia), the owner of the M/V CSS CHICORA; Carline Management Company, Inc. (Carline), the operator of the M/V CSS CHICORA; and Cajun Constructors, Inc. (Cajun), a subcontractor, who entered a contract with Kostmayer for the use of the barge and crane. Kostmayer alleges that Cajun was negligent in failing to provide safe transportation for the barge, and Philadelphia was negligent in towing the barge and failing to maintain control of the tow. Cajun filed a third party complaint against Carline.

Philadelphia filed a complaint for exoneration from and/or limitation of liability under 46 U.S.C. § 181 *et seq.* (No. 06-1272), and the cases were consolidated. Terry Cashman filed a claim for personal injury and damages against Philadelphia under the general maritime law in the limitation proceeding.[1] Kostmayer and Monticello filed a claim, alleging that Philadelphia was

---

[1] Cashman advises that he wishes to proceed in Louiisana state court, pursuant to the saving to suitors clause, 28 U.S.C. § 1333(1). He intends to file a motion to lift the stay.

negligent and that it suffered damages as a result of the accident.  Cajun filed a response to the limitation proceeding; a cross claim against Philadelphia for all damages associated with the allision; and a third-party claim against Northern Assurance Company of America (Northern), Philadelphia's insurer.  Sun Lanes Shipping S.A. and Nikko Kisen KK, the owners and manager of the M/V NAVIOS STAR,  filed  a claim in Philadelphia's limitation proceeding, asserting that Philadelphia is not entitled to limit liability because the vessel was unseaworthy and the captain, crew, officers, and managers of Philadelphia were negligent.[2]

Philadelphia, Carline, Northern Assurance, Kostmayer, Monticello, and Cajun entered the following joint stipulation regarding the claims of Kostmayer and Monticello:  the parties stipulate that Philadelphia and Carline were 100% at fault for the allision.  Philadelphia, Carline and Northern Assurance reserve their rights regarding limitation of liability of the vessel owners and the cause, nature, and extent of damage sustained by Kostmayer, Monticello, and Cajun. The stipulation renders the motion for summary judgment on the issue of liability moot. (Document #105.)

Cajun filed a motion for partial summary judgment on Kostmayer's loss-of-use claim.  In briefing, Cajun limits its request for partial summary judgment to loss of use of crane K-112, the crane in Kostmayer's yard at the time of the allision.  Kostmayer and Monticello filed motions for partial summary judgment on the issue of Cajun's liability for damages sustained while the barge and crane were in tow and on the issue of limitation of liability of Carline and

---

[2]   On April 9, 2007, the court dismissed the claims of Sun Lanes Shipping, S.A. and Nikko Kisen KK against Philadelphia.

Philadelphia.

## II. DISCUSSION

### A.  Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B.  Cajun's motion for partial summary judgment[3]

Cajun contends that the "real issue" in this case involves Kostmayer's claim for economic losses arising out of its alleged inability to use the KC-112.  Cajun argues that Kostmayer cannot recover economic losses for KC-112 because it was not damaged in the allision.

---

[3]  Philadelphia, Carline, and Norther Assurance adopt Cajun's motion for partial summary judgment.  Kostmayer argues that the adoption of the motion is untimely and should not be considered.

Any loss of use of KC-112 that Kostmayer may have incurred is not related to the allision. At the time of the allision, the crane and its related rigging were stored in Kostmayer's yard. After the accident, the boom of the KC-112 was used to replace the damaged boom on the KC-106, and KC-106 was put back into service. The court concludes that the loss of use of KC-112 is not an element of damages for which Kostmayer may seek recovery in this case. Accordingly, there are no disputed issues of material fact, and Cajun's motion for partial summary judgment is granted on the issue of Kostmayer's loss-of-use claim.

**C. Motion for partial summary judgment on issue of liability of Cajun**

Kostmayer contends that, as part of the agreement with Cajun for the use of the crane barge, Cajun obligated itself to tow the barge to the construction site and return it to the Kostmayer facility. Kostmayer argues that Cajun cannot relieve itself of liability by subcontracting for towing services with Philadelphia or Carline.

The parties agree that the subcontract agreement for the use of the barge and crane does not address the arrangements for towing the barge. Cajun argues, however, that Kostmayer incorrectly asserts that Cajun contracted with Kostmayer to tow Barge OU-701. Cajun presents the affidavit of Christopher Thompson, its project manager and estimator, to support its argument. In September 2005, Cajun was engaged in a construction project for Union Carbine Corporation in Plaquemine, Louisiana. Thompson states that he contacted James Kostmayer to determine whether he had a crane barge available. Thompson states that nothing in the subcontract agreement for the crane barge between Kostmayer and Cajun obligates Cajun to

5

provide towage. Kostmayer did not want to arrange for the tug service, and Thompson, with Kostmayer's full knowledge and approval, arranged for Carline to tow the barge to Plaquemine and return it to Kostmayer's yard. Kostmayer states in his deposition that he had no objection to using Carline. He had used the company before and knew it to be a competent tugboat company.

The court concludes that there are disputed issues of material fact concerning any oral agreement for Cajun to contract with Philadelphia or Carline to tow the barge and the intent of the parties in making those arrangements. Accordingly, summary judgment is not proper on the issue of Cajun's liability as a result of arranging for the tow service, and the motion is denied.

**D.  Motion for partial summary judgment on limitation of liability**

Kostmayer and Monticello contend that Carline and Philadelphia are not entitled to limit their liability because Carline's management failed to maintain and inspect the vessel, establish accurate reporting requirements, and properly train the crew. They contend that the allision occurred when the starboard generator lost power and the tug lost its steering capabilities. They argue that the cause of the loss of power was a dirty Racor filter on the starboard generator that had not been changed. Kostmayer and Monticello argue that the shipowner knew or should have known that the ship was unseaworthy because the Racor filter was improperly maintained.

Cajun joins in the motion for partial summary judgment, arguing that Carline is not entitled to the protection of the Limitation of Shipowner's Liability Act because it is not the owner or charterer of the vessel, but merely its operator. Alternatively, Cajun contends that, even if Carline is an owner or charterer, Carline provided an incompetent crew that rendered the

vessel unseaworthy. Cajun argues that the captain and crew were not properly trained and did not know that there was an internal Racor filter.

"The Limited Liability Act allows a vessel owner to limit its liability for any loss or injury caused by the vessel to the value of the vessel and its freight." In re Hellenic Inc., 252 F.3d 391, 394 (5th Cir. 2001). "Under the Act, a party is entitled to limitation only if it is 'without privity of knowledge' of the cause of the loss." Brunet v. United Gas Pipeline Co., 15 F.3d 500, 504 (5th Cir. 1994). If the shipowner is a corporation, "knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss." Id. "Once the claimant establishes negligence or unseaworthiness, the burden shifts to the owner of the vessel to prove that negligence was not within the owner's privity or knowledge." In re Hellenic, 252 F.3d at 394; 46 U.S.C. § 183(a). "[P]rivity or knowledge is imputed to the corporation when the employee is an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred." Id. (internal quotation and citation omitted). "[H]owever, the limited liability doctrine is also sensitive to the scope of an owner's control over his agents." Id. at 396.

The court concludes that there are disputed issues of material fact concerning the application of the limited liability doctrine. Kostmayer and Monticello have not established that the management of Carline and Philadelphia had privity or knowledge of a defective condition aboard the M/V CSS CHICORA. Further, Cajun has not established that Carline is not "an owner or charterer" of the vessel within the meaning of the Act. Summary judgment on this issue is denied.

## III. CONCLUSION

There are no disputed issues of material fact, and Cajun's motion for partial summary judgment is granted on the issue of Kostmayer's loss-of-use of KC-112.

There are disputed issues of material fact, and summary judgment is denied on the issue of Cajun's liability as a result of arranging for the tow service.

There are disputed issues of material fact concerning the applicability of the Act to Carline and whether the managers of the vessel had privity or knowledge of the conditions alleged to have caused of the loss, and summary judgment is denied.

New Orleans, Louisiana, this __3rd__ day of August, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**